This is a case in which the government is attempting to salvage a half-baked operation conducted by some DEA agents attempting to retrieve a vial of saffron that had been brought into this country by using the vehicle of an anticipatory search warrant. What they're doing, and the government in this case is doing, is now attempting to take the condition preceding requirement of the anticipatory search warrant and turn it on its head. They're trying to do things such as suggest that a good faith belief is what you're talking about in an anticipatory search warrant case. That's clearly not the law. That's been made very clear in the circuit in cases such as HODL, where the court specifically said there has to be a clear, expressed, and narrowly specified triggering event to justify an anticipatory search warrant. And in this case, that was spelled out. The court, the magistrate was given an anticipatory search warrant. Actually, it was an amended one. I guess they didn't get the first one right. So the amended one said, the triggering event will be receiving a signal emitted from the electronic tracking equipment contained in the subject parcel indicating that subject parcel has been opened while within the subject premises. Counsel, is it the law that the triggering event in an anticipatory search warrant, the language in the warrant has to be literally complied with? Or isn't it true that the cases have more sort of stepped back and looked at the triggering event in a context of what was occurring? Well, you look at it in a context, but where it's as specific as this one. And the Grubbs case in the circuit spelled out some requirements that the particularity problem is one that you don't want to have confronting the court if you allow the agents to determine when and where a triggering event specifically occurred, because that would lead to unreasonable and unbounded searches. I cited that in my brief on pages 14 and 15 of the opening brief. We also have that Bessie Carew case where technical requirement for the search didn't occur. And we said that, you know, we think that a common sense appraisal of the evidence should occur, not a hyper-technical and narrow reading of the warrant language. Well, you have to have a certain event take place. If there's a condition precedent, that event has to take place. And who decides whether that takes place? The judges who sign off on these warrants are not signing off with the understanding that the agents are going to make determinations. It's not giving them some sort of latitude that they would get in the ordinary search, but rather this is like a contract. It's a condition precedent. It has to occur. And that's the only basis on which the judge authorized it. HODL says it has to be clear, expressed, and narrowly construed. That is what is required. What happened in this case is something far and away different from that, in that the the appellant's apartment. The appellant answered the door, received the package. The postal inspector left. The appellant's apartment was on the second floor of a complex where you could not see his apartment, even from the ground floor. So the agents were waiting outside in the parking lot area and out in the front area. They had no idea for not three minutes, like in Vesikuru, what was going on, but not for 15, not for 20 or 30 or 45, but for an entire hour. And there was nothing that happened until suddenly they see the appellant walking outside the building with two boxes, putting them in a trash container, go back to his car, look in the car, and then walk back into the apartment complex. Counsel, what place, if any, does the concept of exigency have in the circumstances of executing an anticipatory search warrant? The reason I'm asking is that the combination of circumstances that you've just described would lead a reasonable officer to be concerned for the immediate destruction of evidence. And does that make any difference to the analysis? Well, in a way, you have to blame the exigent circumstances on the DEA agents in this case. You'll recall probably another case, I think it was in Grubbs, and I believe in Vesikuru where they had, maybe not in Vesikuru, where they had the alleged contraband in their possession and they just substituted another substance for it. So there would be no danger of anything happening. Here they had it for, under the period of, I'd say, about a week and a half to two weeks in their possession. They didn't do anything other than put powder on it, an iridescent powder, which they didn't get an authorization for from the court to do. And then they had it delivered. But what they did was make sure that if there was some exigency, and it's hard to believe there would be, it'd take about six hours to make MDMA from saffron oil, but... Well, it doesn't take long to flush it down the toilet, though. No. I guess I'm actually sort of perhaps looking for a more theoretical answer rather than the sort of fact-intensive answer that you've given me. That is, in the context of a search warrant of this kind, is it permissible to consider whether there is an exigent circumstance that has arisen that might excuse the specifics of a condition? I don't believe there are. They made it specific. The government asked for what they wanted and they didn't get it. You're not coming to grips with my question, which is the theoretical question. In this context, is it possible for there to be an exigent circumstance that would permit a search to go forward, even in the face of the precise terms of the condition not having been met? I understand that you don't believe that's happened here, but what I'm trying to figure out is whether you think it could happen at all as a theoretical matter. It's not the sort of situation where you have an anticipatory search warrant. It just is hard to believe that exigency is something involved because it wouldn't be anticipatory in nature were there to be exigent circumstances involved with it. Counselor, is it your position that if the triggering mechanism malfunctions, the search is automatically invalidated? It is, because that's what they asked for. They asked for it. They got what they asked for. Had they done something like in Vesicura where they had alternatives, such as if it triggers or if it goes into the premises, we have options. They didn't ask for that. They didn't get that approval. Without approval by a court, the agents are not empowered to decide what the Fourth Amendment requirements of search and seizure law are on their own. They relied on the court, and they got exactly what they wanted, and it turned out not to be something that they found desirable when they didn't do the other things they could have done, such as put surveillance people inside the building, mopping floors, on the floor. The client, Mr. Jones, was actually in the hallways going to other places with the goods because they said it had to be opened within his apartment. Counsel, what case are you relying upon to support your argument that those means would have to be explored before exigency would exist? What case authority are you relying upon? I think I could look at Vesicura even for that, because in Vesicura, what they did was they followed the van to another location where they thought... You've got to make it a requirement, though. That's what I'm asking you. What case authority makes that a requirement that they have to employ those alternatives that you mentioned, like having surveillance, people mopping the floors, and such? What case would require that? A case doesn't require them to do that, but if they wanted to prove the fact that they somewhere else in the apartment was only in his particular suite and not somewhere else in the apartment building complex during that time, they should have done some surveillance. And they didn't. I'd like to reserve whatever time I have. We have about half a minute. May it please the Court, Counsel. Raymond Agon on behalf of the United States. The denial of the defendant's motion to compel, defendant's motion to suppress the contraband, has raised three central issues before the Court. The first issue, essentially, with the Court inquired with counsel about is whether the triggering events of the search warrant actually occurred. As Justice Wardlaw indicated, especially under United States v. Turner, the search warrant in the affidavits must be interpreted in a common sense and realistic rather than a hyper-technical manner. What counsel read to you, read to the Court, was only the second part of the language in the triggering conditions. The first part specifically provides that there will be a probable cause when the parcel has been delivered, taken inside the subject premises, and the electronic device within the package gives the signal that the subject parcel has been opened. But that's what didn't happen here, that the electronic device did not give the signal. That is correct. The second part also discusses that the electronic signal will only be an indicator. There is no discussion that the electronic signal itself is the triggering element. If we were to construe it in that fashion and say that the electronic signal is an actual condition that must happen, that would seem to be that even if the DEA agents were able to peer inside defendant's apartment and actually observe, visually observe, the defendant opening the package and had this electronic device malfunction, there would be no probable cause to enter the apartment, which would be a conclusion that I don't think is warranted here. Counsel, what's your response to opposing counsel's representation that the DEA agents didn't even know that the parcel was inside the apartment because they lost sight of the target? Well, I don't, the record doesn't support that. The DEA agents testified on April 4th at the motion to suppress that they had probable cause in their estimated judgment that they believed that the package was in fact opened inside the apartment. Based on what? Well, there were a number of factors. Number one, the package had actually been delivered to the apartment, the defendant had taken possession of the package, gone back inside the apartment and closed the door. There was an airway circling the apartment complex, had not observed the defendant leaving his apartment. There were two exits, two entrances and exits from the apartment complex, both of which were covered by the agents. Nobody ever saw the defendant leave. And he obviously had to leave if the wrappings were found in the garbage, right? Well, he left and he came down and disposed of the two cardboard boxes and he was seen at that point. And within that time, there was no evidence indicating that he had left before that. Now, the fact we should keep in mind also is that it wasn't someone else that brought those two boxes down to discard them. It was the defendant himself which further confirmed the fact that he had in fact been the one who had been in possession of the package the entire time. There's no, there's nothing in the record which suggests that after the defendant closed the door and took delivery of the package, that he in fact left his apartment complex. Nothing supports that. The DEA agents here have probable cause to believe that in fact it had been opened there. And under United States v. Harvey, there's no specific proof beyond a reasonable doubt requirement for probable cause. There's no absolute certainty that's required. Based on their estimated judgment, they believe that what had transpired in the past hour, the defendant in fact opened the package inside his apartment. What is the point of getting the anticipatory search warrant if they could just deliver it and then just decide that there was probable cause and, you know, that they could go in and search based on their own decision? Why go get an anticipatory search warrant? Well, certain things do need to happen. The package does need to be delivered. The defendant needs to take acceptance, accept the package, take it inside his residence. And the key element here that it has to be opened within the apartment. As the DEA agents conceded during the motion to suppress, had that package been opened somewhere else, there would not be probable cause and the anticipatory search warrant could not have been executed. Therefore, the triggering event here, looking at it on a reasonable basis, based on the language in the affidavit, is that the defendant takes possession of the package, takes it inside the apartment, and in fact opens it inside his apartment. Now, the indicator, being the electronic device malfunctioning, whether that's supposed to go off, that in itself is not the triggering event. That is only to indicate that the package had been opened. If I may address some of the other points that have been raised by the defendant in their brief, including the black light issue and the movement of the container. As the defendant said, in terms of moving the container, that did not constitute a search and seizure. The DEA agents said, were conducting a protected sweep at the time that the container was moved and that it did not constitute a search and seizure. It was at most a de minimis intrusion. The container was not removed or examined and is entirely different from the Arizona v. Hicks case, where in fact the officer in that case actually moved the stereo and by doing so was able to view certain components of the stereo that weren't visible without movement. There was nothing gained here by actually moving the container. There was no other information sought. It was simply moved aside from the floor on top of the television set. That does not constitute a search or seizure. In terms of the black light issue, it would be, I guess the first thing I would say is the first thing to look at is what does constitute a search. And under United States v. Jacobson and longstanding authority, a search occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. We can't deem defendant's expectation here of privacy to be reasonable. He's essentially arguing that he has an expectation of privacy in information relating to contraband, an information which he didn't even likely know existed, the powder on his hands. In fact, he exposed his hands to the public by leaving his apartment. We can't argue that he has such an expectation of privacy. It would be very similar to arguing that use of a flashlight at nighttime constitutes a search. If that were the case, then every time there was a traffic stop at night and a police officer approached a vehicle and shined a flashlight inside the vehicle, that would constitute a search. How do you distinguish the light that was used here from the thermal heating device in Kilo? There are significant technological differences between the thermal imager in Kilo and the thermal imager in Kilo. In Kilo, the court was particularly concerned that the thermal imager, in a sense, allowed the officers to have sort of a video camera. The thermal imager penetrates essentially through the walls and allows the officers to see what's going on inside the home. They didn't really see what was going on inside the home. There was just heat that emanated that they could capture on that. Correct. There was heat and the court specifically stated that it allows the occupants of the residence, while they're moving around, the officers could know and see the most private functions as to what they were doing. That is clearly not the case here. The ultraviolet light simply amplifies what's already visible. What the defendant exposes to the public is exposed to the naked eye by use of the ultraviolet light, which is not the case in using a thermal imager. The ultraviolet light here does not penetrate any surface. It's very similar to a flashlight. It's very similar to night vision goggles, which the district court in the United States v. Dells, I believe, held did not constitute a search. The circuits are divided on that point, aren't they? We haven't actually rolled on it. That is correct. That is correct. The more recent authority indicates that the use of the black light does not constitute a search. There are maybe one or two or a few other cases dating back, I think, to the 1970s, one of them being the United States v. Kenan, I think it's a Fourth Circuit case, that held that it did constitute a search, but more recent authority seems to state that it is not a search. And if we look at cases such as involving night vision goggles, which are very similar to use of a black light because it simply amplifies the ambient light that's already visible, and if we think about it in the sense of a flashlight, then it is not a search. Also, within the last 30 seconds that I have remaining, I would just simply argue that the, as the defendant stated, the ancestry search warrant here was not just based on a good faith belief that the defendant had opened the package, it in fact comes down to probable cause. And probable cause standard cannot be elevated to an absolute requirement of certainty. They had a good faith judgment that it had been opened inside the package and the search warrant was only executed after they believed that it happened. Thank you. Thank you, counsel. We have about a half minute remaining for rebuttal. The, a client testified in this case that the triggering device triggered outside of the appellant's apartment. The condition for a search warrant was not met. That's on excerpts of record 266 and 267. How exigent could things be in this case if they waited an hour for any action to be undertaken? And lastly, the Fourth Amendment particularity requirement is violated when agents are allowed to interpret a warrant by redefining the words contained in that warrant. I would ask that the Court return this case with a reversal to the district court. Thank you. Thank you, counsel. The case just argued is submitted. We appreciate the arguments from both parties. The next case on our docket today is Securities and Exchange Commission v. Cunningham, number 04-56038.
judges: Graber, Wardlaw, Rawlinson